

1   McGREGOR W. SCOTT
    United States Attorney
2   RICHARD J. BENDER
    Assistant U.S. Attorney
3   501 I Street, Suite 10-100
    Sacramento, California 95814
4   Telephone: (916) 554-2731

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9   UNITED STATES OF AMERICA,          )   CASE NO. CR.S-06-0199 EJG
                                       )
10              Plaintiff,             )
                                       )   ORDER DENYING DEFENDANT
11         v.                          )   REYES' MOTION TO SUPPRESS
                                       )   EVIDENCE OF ELECTRONIC
12  ARTURO REYES,                      )   SURVEILLANCE
    JOSE SANDOVAL ACEVEDO, and         )
13  JAMES MOSES NAWATANI,              )
                                       )
14              Defendants.            )
                                       )
15

16         This case came on for a hearing in open court on January 12, 2007, to consider defendant Arturo

17  Reyes' motion to suppress the evidence obtained via electronic surveillance authorized by an Order

18  of this Court (dated January 19, 2006 in S.W. No. 05-273 EJG) pursuant to 18 U.S.C. § 2518.

19  Defendant Arturo Reyes was present and represented by his attorney, Gretchen Von Helms, Esq.

20  Defendant Acevedo was present and also represented by Ms. Von Helms who made a special

21  appearance for defendant Acevedo attorney, Michael Bieglow, Esq. Defendant Nawatani was not

22  present, having already entered a guilty plea and pending sentencing. The United States was

23  represented by Assistant U.S. Attorney Richard Bender. Prior to the hearing, the Court reviewed the

24  various memorandum submitted by the attorney for defendant Reyes and by the government. At the

25  hearing, the Court afforded both counsel the opportunity to orally supplement their memorandum.

26         For the reasons stated in open court, the defendant's motion to suppress evidence obtained via

27  electronic surveillance was denied. A transcript of that hearing, containing the Court's comments is

28

1

1   attached hereto and made a part of this order.

2       It is SO ORDERED.

3

4   Dated: February __7__, 2007

5                                    EDWARD J. GARCIA
6                                    Senior, U.S. District Judge

7

8

9   Dated:
                                     McGREGOR W. SCOTT
10                                   U.S. Attorney

11
                                  by
12                                      RICHARD J. BENDER
                                        Assistant U.S. Attorney
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        2

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---oOo---

THE UNITED STATES OF AMERICA,            )
                                         )
                    PLAINTIFF,           )
                                         )
vs.                                      )   Case No. Cr.S-06-199
                                         )
ARTURO REYES    and                      )
JOSE SANDOVAL ACEVEDO,                    )
                                         )
                    DEFENDANTS.          )
_____)

---oOo---

REPORTER'S TRANSCRIPT OF PROCEEDINGS HELD

FRIDAY, JANUARY 12, 2007

HONORABLE EDWARD J. GARCIA, PRESIDING

---oOo---

REPORTED BY:  PATRICIA A. HERNANDEZ, CSR #6875

# A P P E A R A N C E S

FOR THE UNITED STATES
OF AMERICA:                Richard Bender
                           Attorney at Law
                           U.S. Attorneys Office
                           Department of Justice
                           501 I Street
                           Sacramento, California  95814


FOR THE DEFENDANT
ARTURO REYES:              Gretchen Christine Von Helms
                           Attorney at Law
                           105 West F Street, 3rd Floor
                           San Diego, California  92101


FOR THE DEFENDANT
JOSE SANDOVAL ACEVEDO:     Ms. Von Helms appearing for:
                           MICHAEL BIGELOW
                           Attorney at Law
                           428 J Street, #350
                           Sacramento, California  95814

```
1                           ---oOo---

2                           PROCEEDINGS

3                           ---oOo---

4            THE CLERK:  Criminal S-06-199, United States versus

5    Arturo Reyes and Jose Acevedo.

6            MS. VON HELMS:  Good morning, your Honor.  Gretchen

7    Von Helms on behalf of Arturo Reyes.

8            MR. BENDER:  Good morning.  Richard Bender for the

9    United States.

10           MS. VON HELMS:  I am also specially appearing for

11   attorney Mr. Bigelow on behalf of Mr. Acevedo.  I

12   represent Mr. Reyes.  Mr. Acevedo is this gentleman here

13   in the brown jacket and Mr. Reyes is in the black jacket.

14   I represent Mr. Reyes but I have been in contact with the

15   attorney Mr. Bigelow, and he had an appearance in front of

16   the Ninth Circuit who would not bow and release him to

17   come to your Honor.

18           THE COURT:  We were alerted to Mr. Bigelow's

19   possible nonappearance today.

20           MS. VON HELMS:  He contacted me and I agreed to

21   appear.  I spoke with his client and his client agrees

22   that I may appear for and he waives appearance of conflict

23   counsel.

24           THE COURT:  That is okay with you, Mr. Acevedo?

25           DEFENDANT MR. ACEVEDO:  Yes, it is.

26           THE COURT:  The matter is on calendar this morning

27   for hearing on Defendants motion to suppress electronic

28   surveillance evidence and for trial confirmation hearing

                                                              1
```

```
1    as to both Defendants.  Jury trial is scheduled to
2    commence February 7th, '07, at 9:00 a.m.
3              MS. VON HELMS:  That's correct, your Honor.
4              May I ask that my client be seated during --
5              THE COURT:  Sure.  Only Defendant Reyes is on the
6    motion.
7              MS. VON HELMS:  Did Mr. Bigelow file a joinder?  He
8    had -- may I request that he be allowed to join at this
9    time as to Mr. Acevedo?
10             THE COURT:  No.
11             MS. VON HELMS:  Okay.  Can they both be seated,
12   however, your Honor?
13             THE COURT:  Yes.  Have you been notified by
14   Mr. Bigelow that he was joining in this motion?
15             MS. VON HELMS:  I believe I thought that he was the
16   way that we discussed the case.  I never received notice
17   by electronic alert that he had but --
18             THE COURT:  Well, I am asking if he ever told you
19   that.
20             MS. VON HELMS:  No, your Honor, but the way that he
21   discussed the case with me I assumed that he --
22             THE COURT:  I don't understand what you are trying
23   to --
24             MS. VON HELMS:  I was talking about --
25             THE COURT:  Just a minute.  Please don't interrupt
26   when I am speaking.
27             I don't understand what you are trying to explain.
28   It's a very simple question.  Have you been told by
```

2

1   Mr. Bigelow that he is joining in this motion?

2       MS. VON HELMS:  Not in so many words, your Honor.

3   If I may --

4       THE COURT:  Okay.  Never mind.  Your request is

5   denied.

6       On December 12, 2005, and January 19, 2006, this

7   Court issued orders authorizing Title 3 wire taps on two

8   cellular telephones in connection with a Federal DEA

9   investigation into a suspected drug trafficking conspiracy

10  in the Stockton area of this district.  These wire taps

11  target the main suspect conspirator Defendant Reyes and

12  his cell phone, and the cell phone of one Salvador Garcia.

13  Garcia is a Defendant in a related action now pending in

14  this court.

15      Section 2518 of Title 18 sets forth the exhaustive

16  and detailed requirements for the interception of

17  electronic communications.  Defendant Reyes now moves to

18  suppress the results of the electronic surveillance on

19  both target cell phones on the sole basis that the two

20  wire taps lack necessity as required by Section 2518

21  Subdivision 1(c) of Title 18 U.S. Code.

22      I reviewed the briefs and revisited the Court's own

23  records concerning the two wire tap applications and

24  orders of authorization I issued.  I have also reviewed

25  the cases cited in the briefs, noting especially the case

26  site by the Defendant regarding the necessity required

27  before a wire tap order is issued.  I have also studied

28  the Ninth Circuit U.S. v McGuire case cited by the

3

```
 1   Government regarding the necessity requirements in the
 2   context of a criminal conspiracy investigation.
 3          I'll hear from counsel if you wish now.
 4          MS. VON HELMS:  Yes, your Honor.
 5          THE COURT:  Is there anything, Mr. Bender, that you
 6   may wish to add not covered in the briefs or that you may
 7   wish to briefly emphasize?
 8          MR. BENDER:  No, your Honor.  Perhaps argument
 9   that I might have to respond to what Defense counsel might
10   raise.
11          THE COURT:  All right.  Miss Von Helms?
12          MS. VON HELMS:  Your Honor, essentially my argument
13   is that it does lack necessity, and the reason why is this
14   is because --
15          THE COURT:  Excuse me, Miss Von Helms.
16          MS. VON HELMS:  Yes.
17          THE COURT:  You apparently didn't understand me.  I
18   have read the briefs.
19          MS. VON HELMS:  I understand you requested that I
20   make argument.
21          THE COURT:  No.  I am asking is there anything that
22   you want to add not covered in your briefs or that you may
23   briefly wish to emphasize?
24          MS. VON HELMS:  Briefly I would wish to emphasize
25   that if this passes the necessity prong, your Honor, I
26   think that they could basically tap any phone.  They have
27   had a cold case, an air-tight case against Salvador Garcia
28   and absolutely did not need that wire tap they indicated
```

4

```
 1   that they needed to further this investigation into
 2   sources and what have you, but the Ninth Circuit does not
 3   authorize them to go and get all --
 4             THE COURT:  Are you conceding that they also have
 5   an ironclad case against the Defendants Reyes and Acevedo?
 6             MS. VON HELMS:  No, your Honor.
 7             THE COURT:  Okay.  You seem to say so in your
 8   brief.
 9             MS. VON HELMS:  Oh, no, your Honor, I did not mean
10   to imply that in my brief.  I indicated --
11             THE COURT:  No, it's not an implication.  You laid
12   it out.  In fact, your exact words were that the evidence
13   was overwhelming as to the Defendant Reyes.
14             MS. VON HELMS:  Well, your Honor, I meant that it
15   was overwhelming against Salvador Garcia.  I think that
16   the Defendant --
17             THE COURT:  You talk about both of them.
18             MS. VON HELMS:  Okay.  My mistake, then, your
19   Honor.
20             THE COURT:  Did you write the briefs?
21             MS. VON HELMS:  Yes, your Honor.
22             THE COURT:  Okay.
23             MS. VON HELMS:  The wire tap against Salvador
24   Garcia, target telephone one, is not necessary because
25   they already had two undercover buys from Garcia.  They
26   had two confidential informants against Garcia.  They had
27   overwhelming evidence against Mr. Garcia, and they did not
28   need to have a target, you know, to wire tap his target
```

5

```
 1   telephone one.

 2        When they did that, then they got further
 3   information that they said they weren't able to get from
 4   the sources of supply, although they said they did see his
 5   source of supply on two different occasions, and they
 6   would have had the ability to follow that person and
 7   follow that person after those buys were made.  They
 8   elected not to do it because they wanted to continue to
 9   build up poundage against Mr. Garcia.

10        That is -- the Ninth Circuit does not say that you
11   can use the wire taps to go after everybody and to arrest
12   every known conspirator.  What they say is that they give
13   a little bit more leeway in those cases, but that does not
14   mean that the telephone wire taps are to be used to get
15   all people in the conspiracy because they did not follow
16   up on their methods for which to arrest the supplier
17   Garcia, it is not that person's fault or it's showing that
18   they didn't follow up on those messages which they had
19   available to them and could have gone after that person
20   with additional methods.  They did not need to get the
21   wire tap information.

22        THE COURT:  All right.  Anything further,
23   Mr. Bender?

24        MR. BENDER:  Your Honor, I think it's been
25   addressed in the Government's briefs so I don't think we
26   need to reiterate it.

27        THE COURT:  All right.  The motion to suppress will
28   be denied.
```

6

1    To satisfy the necessity requirement the
2    application for the wire tap must include a full and
3    complete statement as to whether other investigative
4    procedures have been tried and failed or why they
5    reasonably appear to be unlikely to succeed if tried or
6    it would be too dangerous; however, law enforcement
7    officers need not exhaust every possible investigative
8    alternative before obtaining a wire tap.

9        Ninth Circuit law gives the Trial Court discretion
10   to evaluate the reasonableness and good faith of the
11   Government's explanations regarding the efforts to use
12   alternative investigative techniques or its failure to do
13   so because of the low probability of success.

14       I have done so, and I find that the Government's
15   explanations on the body of the two applications to be
16   reasonable and in good faith. The applications
17   exhaustively explain each of the investigative techniques
18   used, their success, if any, and why other listed
19   investigative procedures would fail or not produce the
20   required proof beyond a reasonable doubt for a successful
21   prosecution.

22       The wire tap application affidavit for Garcia's
23   cell phone discusses the physical surveillance conducted
24   of Salvador Garcia and its limitations, the use of several
25   confidential informants, and the one key confidential
26   informant who had access to Garcia but whose usefulness
27   was compromised by the confidential informant's conduct in
28   unrelated cases.

7

1          The application discusses why undercover officers

2   could not be used at the quantity levels needed to bring

3   out Garcia's supplier and the use of ~~total~~ toll records and pen  ETG

4   registers in the investigation, but they are of limited

5   value.  It i~~s~~ discusses why agent interviews and Grand

6   Jury and administrative subpoenas were not feasible in

7   this investigation, and though agents had sufficient

8   evidence to arrest and successfully prosecute Garcia based

9   on two agent monitored confidential informant meth. buys

10   from Garcia, his arrest and issuance of a search warrant

11   for his residence would add little and would compromise

12   the investigation which was seeking the identity of

13   Garcia's supplier.

14          The pre application investigation included a trash

15   search of Garcia's residence and it failed to create

16   sufficient evidence to convict Garcia's suppliers or other

17   members of his organization.  Similarly, the wire tap

18   application affidavit for Defendant Reyes' cell phone

19   explains each of the investigative techniques used prior

20   to the application to the wire tap of Reyes' phone,

21   including the results of the Garcia wire tap as

22   investigators attempted to positively identify Defendant

23   Reyes as the user of the targeted cell phone.  At that

24   state of the investigation the user of the target cell

25   phone was suspected as Garcia's drug supplier, and

26   Defendant Reyes was a suspected user of the phone.  These

27   suspicions and their basis are fully explained in the

28   application affidavit for the wire tap of Defendant Reyes'

8

1    cell phone.

2         Additional investigator results to date have

3    resulted in establishing a link between Reyes and Garcia's

4    organization.  This included physical surveillance of

5    Reyes' activities, including his use of his Lincoln and a      ETG

6    Navigator registered to him which was apparently used in

7    the drug trafficking conspiracy involving Reyes and

8    Garcia.

9         The application affidavit in detail also explains

10   other investigative techniques that were considered and

11   rejected as unlikely to succeed and likely to compromise

12   the investigation.  For example, interviewing and placing

13   persons under oath before a Grand Jury, the use of search

14   warrants for Garcia and Reyes' residence, and the stopping

15   the vehicle suspected of drug dealing with the user of

16   Reyes' cell phone.  Other investigative techniques that

17   were used but resulted in evidence of limited value in

18   positively identifying the user of Reyes' cell phone which

19   was listed with the phone company under fictitious name.

20        As to Defendant's arguments that the investigation

21   prior to issuance of the wire taps resulted in evidence

22   more than sufficient to prosecute Garcia, his drug

23   trafficking organization and Defendant Reyes, these

24   arguments fail in the face of applicable legal principles

25   discussed in the Ninth Circuit U.S. v McGuire, [ph.], case

26   at 307 Federal 3d, 1192, a 2002 case.  As explained there,

27   the Government has considerable more latitude in wire

28   tapping members of a conspiracy than in investigations of

9

1    individual criminal activity. The latter comes to an end
2    upon the capture of the perpetrator while in a conspiracy
3    even the main conspirator -- even when the main
4    conspirators are in prison, others may remain at large to
5    pursue the conspiracy's illegal ends.

6         Here, as explained in the applications for both the
7    wire taps, the main thrust of the wire taps was to
8    identify and prosecute Garcia's suppliers and other
9    members of his organization which could not be
10   accomplished through traditional investigative methods.

11        For these reasons I find that Section 2518
12   Subdivision 1(c) has been complied with in that the
13   application for the two wire taps in issue contain full
14   and complete statements that other investigative
15   procedures have been tried and failed, and that others
16   reasonably appear to be unlikely to succeed if tried or
17   would possibly compromise the investigation.

18        The motion to suppress is denied.

19        The U.S. Attorney is directed to prepare a summary
20   order citing to the Court's on-the-record analysis of
21   decision.

22        MR. BENDER: Your Honor, would you prefer for me to
23   wait to get a transcript and then just attach it to the
24   summary?

25        THE COURT: That will do. Either way.

26        Now, the matter is also on for trial confirmation
27   hearing. The trial is scheduled to commence February 7.
28   Is it going to go on that date, counsel?

MS. VON HELMS: No, your Honor.

MR. BENDER: Your Honor, I think there is a joint motion by essentially all three counsel. I know that Miss Von Helms has a murder trial that she is starting in February, and I know that Mr. Bigelow is in trial right now. I don't know how long that schedule will go.

With my health condition I am back to work part time this month, eight hours a day next month, and I am not going to be ready to try a case until at least the latter part of March or early April. So for continuity of all three counsel, we would request that the case be set for trial either in late March or early April, at the Court's convenience, and that time be excluded based on continuity of counsel or both for all three parties.

I think there is a substantial chance that the case will settle. If so, we plan to try to have that done by around the end of February or first week of March, and we would ask a trial confirmation hearing be set.

THE COURT: While counsel are considering dates for trial or confirmation hearing, as I indicated in a previous status conference, I was surprised to find that these two Defendants, Reyes and Acevedo, are essentially out on their O.R. That is, each has a $25,000 unsecured bond.

I called for the Pretrial Services reports in this case and noted that the Pretrial Services reports were prepared at a time that these two Defendants were charged only with one telephone count in the complaint which

11

1   carried a maximum penalty of four years.

2   If that were the only charge against the Defendant,
3   it's arguable that the 25,000 unsecured bond might be
4   satisfactory because of both Defendants' ties to their
5   community. However, since then, based on a third
6   Defendant's plea of guilty under oath, I see now that
7   Defendants Reyes and Acevedo could be found to have
8   trafficked in crystal meth. in quantities up to nine
9   ounces. Am I correct that that is a ten year mandatory
10  minimum if that was so, if that were true, Mr. Bender?

11  MR. BENDER: It is, your Honor.

12  THE COURT: So that is ten to life. With that type
13  of a penalty, there is a presumption that both of the
14  Defendants are flight risks and dangers, and apparently no
15  such evidence was presented at the Detention Hearing
16  before the Magistrate Judge in this case because
17  apparently he didn't or she didn't know about the
18  mandatory ten to life sentence and how extensive the
19  indictment was charging the Defendants, and of course she
20  didn't know the quantity of proof based on the cooperating
21  witness in the case.

22  MR. BENDER: Well, your Honor, it's a little
23  different than that because the indictment took place well
24  before the plea of the third Defendant. So it was
25  combined telephone counts, and then they were released on
26  the bond. Then the indictment came down which charged a
27  conspiracy in addition to the telephone counts, and then
28  it was some months later that Mr. Sandoval pled guilty.

12

1      MS. VON HELMS: That's correct, your Honor, but
2    they knew of the indictment when we appeared in court, and
3    they came. They have showed up to every single court
4    appearance. They have always been here. They have always
5    been present. They know what the punishment is that they
6    are looking at. They know --

7      THE COURT: They know that it's ten to life
8    mandatory minimum on conviction?

9      MS. VON HELMS: Oh, absolutely. The two Defendants
10   know. They were arraigned on that. They were told that
11   the judge was, given that, going to increase their bail --
12   or not -- it was decided that they already came, they had
13   shown up, they --

14     THE COURT: Was the Pretrial Services officer
15   there?

16     MS. VON HELMS: I believe so, yes, and they showed
17   up knowing that that was going to be an indictment. They
18   were arraigned on that indictment, and they have been
19   coming ever since knowing that that's the punishment.
20   There is offers for them of phone counts, there are plea
21   offers out there. I don't see any point to remand them at
22   this point and to revoke their bail without further
23   hearing at least.

24     THE COURT: Oh, I would not do that without a
25   further hearing.

26     MS. VON HELMS: All right. They have always come.
27   They have always shown up.

28     THE COURT: You're repeating yourself.

13

1    MS. VON HELMS: I understand, but I think that that
2    shows that they will come on that bond. The bond that is
3    supposed to be set is only necessary to ensure an
4    appearance for risk of flight, and they have proven that
5    they will show up on that bond by their conduct.

6    MR. BENDER: Well, it's an unsecured bond. That is
7    a concern.

8    THE COURT: Mr. Bender, I went over the minutes
9    before the Magistrate in connection with this case and
10   apparently the Government did not oppose the unsecured
11   bond.

12   MR. BENDER: That's correct, your Honor. The
13   reason for that is it's, quite frankly, a very uphill
14   battle. You have Pretrial Services who were recommending
15   release in front of Judge Drozd. You pick your battles
16   before the Magistrate and you consider all of those
17   factors, and the biggest factor, quite frankly, for Judge
18   Drozd which would impact, of course, our position was that
19   neither of these Defendants have criminal records.

20   THE COURT: All right. I'll tell you what I will
21   do to shorten this up, I won't remand the Defendant's
22   today and schedule a hearing. I'll await the Government's
23   pleasure in the event that you file a motion to revoke.
24   I'm not going to do it sue sponte.

25   MR. BENDER: Yes, your Honor. I think what we will
26   probably do is talk to defense counsel and see if we can
27   come up with a secured bond that meets the needs. Quite
28   frankly, I am uncomfortable with the present status, but

14

```
1    given how far we have come, I think if we can get a
2    secured bond under those circumstances it would make
3    sense.
4             THE COURT:  Okay.  See what you can work out with
5    the defense, then.
6             MR. BENDER:  Okay.
7             THE COURT:  How about this trial date?
8             MS. VON HELMS:  Your Honor, we were asking for -- I
9    start a murder trial on the 5th of February which was
10   supposed to start on the week before Christmas, and then
11   the judge continued it to the first week in February
12   because of the holidays, and so that is set to go.  There
13   is a six to eight week trial estimate, and so I will be in
14   trial.
15            So what I would like to do is set a pretrial
16   conference or status conference on the 26th of March --
17   I mean -- I'm sorry, on the 30th of March and a trial
18   date starting the 9th.  You start on Mondays; correct?
19   That is Easter Monday and I don't know if that is a
20   holiday, April 9th.  If it is a holiday, then April 10 --
21   No, the 16th.  I'm sorry.  The 16th of April.
22            THE COURT:  Just a minute, please.  I have a
23   calendar here.
24                          ---oOo---
25                  [Discussion off the record.]
26                          ---oOo---
27            THE COURT:  So you're requesting a trial to begin
28   April 16, '07?
```

15

```
1        MS. VON HELMS:  That's correct, your Honor.

2            THE COURT:  We usually set a trial confirmation

3    hearing two weeks prior to the trial date.

4            MR. BENDER:  Your Honor, I think we should actually

5    move this one further up from that because, quite frankly,

6    if this case doesn't settle by around the end of February,

7    we're going to be going to either March 23, Friday, or

8    March 30th, Friday, your Honor, for the pretrial

9    conference date.

10           MS. VON HELMS:  What is the second date that you

11   suggest, those two Fridays at the end of March?

12           MR. BENDER:  The 23rd or 30th.

13                         ---oOo---

14                 [Discussion off the record.]

15                         ---oOo---

16           THE COURT:  How about March 30th for trial

17   confirmation hearing?

18           MS. VON HELMS:  That will be fine.

19           MR. BENDER:  That will be fine.

20           MS. VON HELMS:  Thank you.

21           THE COURT:  All right.  The Court will find

22   excludable time pursuant to Local Code T-4, continuity

23   of counsel and attorney preparation; is that agreeable,

24   Miss Von Helms?

25           MS. VON HELMS:  Yes, your Honor, both on my behalf

26   and Mr. Bigelow's behalf.

27           THE COURT:  Mr. Bender?

28           MR. BENDER:  Yes, your Honor.
```

16

1       MS. VON HELMS: The other thing I would like to

2   raise, your Honor, is I don't know Mr. Bigelow's trial

3   schedule. He informed me that he was starting a capital

4   murder case, a death penalty case right after his trial

5   that he's in right now which I believe is also a homicide

6   case, so I wasn't able to get exact dates from him, but if

7   there is a conflict, I will have him check with your clerk

8   and we can set a status.

9       THE COURT: Okay. Anything further for now, then,

10  Miss Von Helms?

11      MS. VON HELMS: No, your Honor.

12      THE COURT: Mr. Bender?

13      MR. BENDER: No, your Honor.

14      THE COURT: All right. Thank you, counsel.

15      MS. VON HELMS: Thank you, your Honor.

16      THE CLERK: T-4 to the trial date?

17      THE COURT: Yes, excludable time would be found up

18  to April 16, '07, the trial date.

19      MS. VON HELMS: Thank you, your Honor.

20                          ---oOo---

21          [Whereupon proceedings concluded.]

22                          ---oOo---

23

24

25

26

27

28

17

CERTIFICATE OF SHORTHAND REPORTER

I, Patricia A. Hernandez, a Certified Shorthand Reporter of the State of California, do hereby certify that I am a disinterested person herein; that I reported the foregoing hearing in shorthand writing; that I thereafter caused my shorthand writing to be transcribed into typewriting.

I further certify that I am not of counsel or attorney for any of the parties to said hearing, or in any way interested in the outcome of said hearing.

IN WITNESS WHEREOF, I have hereunto set my hand this 6th day of February, 2007.

Patricia A. Hernandez
Certified Shorthand Reporter
License Number 6875